Argued June 18; modified July 7, 1936

In re Potter's Estate

BANKS *v.* CAMPBELL et al.

(59 P. (2d) 253)

*Elmer Johnson,* of Portland, for appellants.
*William W. Banks,* of Portland, for respondent.

KELLY, J. On October 13, 1935, Sola M. Potter, upwards of 70 years of age, died testate in Portland, Oregon. Her husband, Willis E. Potter, likewise upwards of 70 years, survived her.

Olivia Osterhaug, now approximately 21 years of age, entered the Potter home when she was but two years and seven months old, remaining there until the death of Mrs. Potter. The relation between Mrs. Potter and Miss Osterhaug was like that of an affectionate mother and daughter.

While there is some dispute, with which we are not now concerned, as to the title of an undivided one-half of lot 3, it is conceded, by all concerned, that at the time of her death Sola M. Potter held title to lots 1, 2, 6 and an undivided one-half of lot 3 of block 11, Paradise Springs Tract, Portland, Multnomah county, and was the owner and possessor of the personal property in suit.

By her last will, Sola M. Potter appointed Earl S. Campbell, executor, and gave to her husband lot 6 in lieu of curtesy and homestead rights. To Earl S. and Cora Campbell she devised lot 1, and the residue of her estate she gave to said Olivia Osterhaug.

On October 23, 1935, said will of Sola M. Potter was duly admitted to probate.

On November 22, 1935, the inventory and appraisement in said estate was filed herein.

On November 23, 1935, said Willis E. Potter filed his petition to have set apart to him certain real and personal property as a homestead and as exempt property, and in said petition said Willis E. Potter expressly renounced the provisions of said will of Sola M. Potter, deceased, in so far as it pertained to him.

The executor, as such, and personally, with Cora Campbell and Olivia Osterhaug, who for convenience will be termed the defendants, filed an answer and objections to said petition of Willis E. Potter, the issues were formed, and on December 5, 1935, a hearing thereof was had in said court, testimony was received and arguments of counsel heard. When the cause was thus submitted, the court granted permission to counsel to file briefs, the time for filing same not being fixed. On December 14, 1935, the petitioner served and filed a 20-page brief. On December 21, 1935, Willis E. Potter died intestate. Defendants' reply brief had not been filed at that time.

On December 24, 1935, William W. Banks was appointed administrator of the estate of said Willis E. Potter, deceased, duly qualified as such, and upon application was authorized to appear herein as the personal representative of the said Willis E. Potter, deceased.

On February 13, 1936, the defendants, first having obtained leave of the court so to do, filed herein their supplemental answer and objections to the petition of said widower for assignment to him of exempt property, and to such supplemental answer, said William W. Banks, by leave of the court first obtained, as administrator of the estate of said Willis E. Potter, deceased, filed a reply.

On February 20, 1936, the trial court entered the order from which this appeal is prosecuted. It was made as of November 22, 1935, and set aside to Willis E. Potter, as a homestead lots 1, 2 and an undivided one-half of lot 3 in said Paradise tracts, and also assigned to him all the personal property described in his petition.

Two questions are presented:

First: Did the court have jurisdiction and authority to set out a homestead and exempt personal property to Willis E. Potter after he was dead and to make the decree effective as of a day prior to the day on which he filed his petition asking to have a homestead set out?

Second: If the court did have authority to set out a homestead, could lots 1 and 2 be included therein?

"It is a common-law rule that the death of a party abates a pending action regardless of whether or not the cause of action survives." 1 C. J. S. Abatement and Revival, § 115.

"Unless there is an applicable statute providing otherwise, the death of a party abates a suit in equity but only in the limited sense of interrupting or suspending the proceedings until new parties are brought in and the cause revived." Ibid. § 117.

The Oregon statute provides that "no action shall abate by the death * * * of a party * * * if the cause of action survive or continue.": Section 1-311, Oregon Code 1930. This statutory provision is made applicable to suits in equity. Section 6-107, ibid.

The statute also provides that all causes of suit by one person against another, however arising, survive to the personal representative of the former and against the personal representatives of the latter: Section 6-701, ibid.

■■ The right to a homestead, however, is statutory. Under the statute, this court has held that upon the death of the owner the real property, which comprises a homestead passes to the heirs and that this title is not divested until the homestead is set apart by the probate court: *Iltz v. Krieger*, 104 Or. 59, 66 (202 P. 409, 206 P. 550). By parity of reasoning, in the case at bar the title passess to the devisees.

■ It is argued that the death of the widower, before the probate court made the order setting apart to him the real property in suit as a homestead, terminated the right to have it set aside.

With this contention, we are unable to agree.

■ The right to the homestead accrued when the widower, Willis E. Potter, renounced the provisions of the will and filed his petition to have the real property set aside as a homestead. It was argued that it became the duty of the probate court to make an order setting aside the homestead when the inventory and appraisement were filed, but we think that until the provisions of the will, containing a devise inconsistent with the claimant's right to claim the right of homestead, were renounced by the claimant, such right was nonexistent.

■■ The failure to enter the order setting aside the homestead property in Willis E. Potter's lifetime was due to the court or its officers, and for that reason the court had the power to make the order nunc pro tunc. Annotation, Subject: "Power to enter judgment nunc pro tunc after death of party.": Vol. 3 A. L. R. p. 1403, et seq.; Vol. 68, A. L. R. p. 261, et seq.

"To enable a judgment to be entered nunc pro tunc after a party has died, the cause at the time of such death must be ripe for judgment. If it is not then in such condition, judgment nunc pro tunc can not be entered." Vol. 3 A. L. R. p. 1405.

The contention of defendants is that, because their written brief had not been filed when Mr. Potter died, the cause was not then ready for judgment.

This question has been decided by the Illinois court of appeals. There it was held that when respondent had filed his brief and abstract of the case on appeal, although the reply brief had not been filed and the oral arguments were set for hearing on a date subsequent to the death of respondent, the case was ready for trial so as to give the court jurisdiction to enter its judgment nunc pro tunc: *Citizens Securities and Investment Co. v. Dennis*, 236 Ill. App. 307.

In a case which had not yet been actually submitted and wherein the plaintiffs had not yet served or presented to the court the final brief provided for in the order of the court, the supreme court of California approved the rule announced in the Illinois case just cited. We quote from the prevailing opinion:

"In addition to the authorities cited in the above opinion, may be added the case of Citizens Securities and Investment Company v. Dennis, 236 Ill. App. 307, which is singularly similar to the instant case in all its essential features. It is an appellate case, it is true, but the proposition is treated in its general sense. The question there was whether the action abated by reason of the failure of plaintiff to file a closing brief. The death of the defendant occurred July 14, 1924. On June 3, 1924, counsel for plaintiff filed his brief; on June 30, 1924, counsel for defendant filed defendant's brief; on July 7, 1924, leave was granted to the plaintiff to file its reply brief on or before August 26, 1924; on July 25, 1924, eleven days after defendant's death, plaintiff filed his reply brief. The cause was then set on the oral argument calendar to be argued October 27, 1924. No oral argument was made by either party. The motion made by defendant for abatement was opposed by plaintiff, who contended that judgment

nunc pro tunc as of July 14, 1924 (the day of defendant's death), should be entered. Discussing the rule that where one of the parties dies after appeal taken, a judgment nunc pro tunc may be entered as of a date prior to the death of the party provided the court had acquired jurisdiction and rightful authority to render a judgment on that date, said court holds the appellate rule to be in substantial conformity with the general rule in regard to the power of a court to enter judgment nunc pro tunc in cases where the cause was in such condition at the date to which the judgment is to relate back that a final judgment could then have been entered immediately. (1 Black on Judgment § 133, pp. 150, 151; 23 Cyc. p. 840; 34 C. J. § 209, p. 72). The court restates the well-recognized principle of necessity in furtherance of justice and in order to save a party from unfair prejudice through delay caused by the act of the court or through the course of judicial procedure, upon which such judgments are sustained.'' *Leavitt v. Gibson,* 3 Cal. (2d) 90 (43 P. (2d) 1091).

"The power to enter judgments nunc pro tunc is inherent in the courts. Where the party is not at fault, the determinative consideration moving the court is whether or not the action at the death of the party was ready for rendition of final judgment.'' *Norton v. City of Pomona,* (Cal. App.) 43 P. (2d) 586.

In the case last cited, the action was commenced December 31, 1931. After trial before the court without a jury, the cause was on April 14, 1933, ordered submitted on filing of briefs. On June 2, 1933, the court made its minute order for judgment in favor of plaintiffs against one of the defendants, and in favor of the other defendant. The record fails to show that findings were waived. On June 23, 1933, plaintiff died and on July 24, 1933, letters testamentary were issued Alma A. Norton as executrix of plaintiff's estate. On August 22, 1933, plaintiff, Alma A. Norton, individually, and as executrix moved the court for an order to

file findings and judgment in the case nunc pro tunc as of date June 2, 1933. On November, 1933, the court granted the same and on the same day filed its findings, conclusions and the judgment appealed from, which judgment was entered by the clerk on November 6, 1933, nunc pro tunc as of June 2, 1933. The judgment was affirmed.

■ From this it will be noted that the right to enter a judgment nunc pro tunc under the circumstances shown by the record in the case at bar does not depend upon the statute. It is a right inherent in the court.

■ Section 2-1509, Oregon Code 1930, prescribes the duty of the clerk of the court with respect to the entry of a judgment when such officer is unable or omits to enter a judgment within the time prescribed by statute. It does not restrict or limit the inherent power of the court.

■ We think that the order setting apart a homestead should have been entered as of a time subsequent to the renunciation of the will of Sola M. Potter by Willis E. Potter. If Mr. Potter had died before such renunciation, the terms of the will would have been effective and controlling.

"The usual practice is to enter the judgment as of the term or time of submission." 68 A. L. R., supra, p. 266, and authorities there cited.

Under this rule, the order appealed from should have been entered as of the day the cause was submitted which was December 5, 1935.

This brings us to a consideration of the question whether lots 1 and 2, or either of them, should have been included as part of the homestead.

■ The testimony discloses that part of lot 2 was used as a garden wherein vegetables were grown, at

least part of which were consumed in the home of Mr. and Mrs. Potter. There were fruit trees on lot 2 and from these trees the Potters gathered the fruit, selling part of it and using some of it in the home. It is also shown that an oil tank is upon said lot 2 serving the oil burner used in the residence on lot 3. While, besides these facts, it also appears that on said lot 2 is one of the two garages used by tenants of the building on lot 1, nevertheless, we think that lot 2 should be included with lot 3 as comprising the homestead property.

■ While on part of lot 1, at times, the Potters maintained a garden, we think the testimony does not justify a finding that said lot 1 was any part of the actual abode of Willis E. Potter. The statute provides that the homestead must be the actual abode of and occupied by the owner, his or her spouse, parent or child. Section 3-201, Oregon Code 1930.

A situation, similar to the one here considered, presented itself in the case of *Smith v. Kay,* 153 Or. 80 (54 P. (2d) 1160). There Mr. Justice BAILEY says:

"Section 3-201, supra, provides that the 'homestead must be the actual abode of and occupied by the owner, his or her spouse, parent or child'. Prior to the amendment of the homestead law in 1919, it was provided that if the homestead was located in a town divided into blocks and lots, 'in no instance shall such homestead be reduced to less than * * * one lot, regardless of value' Sec. 222, L. O. L. We have no such requirement in the present law as to the minimum area to which a homestead may be reduced."

In that opinion it was also said that,—

"In determining how much land is appurtenant to a dwelling house it is necessary to consider the use to which the land is put, rather than the quantity of ground owned by the homestead claimant. Under our present law the maximum quantity of land, in a city

or town laid off in blocks and lots, that can be claimed as exempt from sale on execution, is one block. Section 3-202, Oregon Code 1930. This does not mean, however, that the homestead claimant may assert a right to have an entire block exempt, if the value thereof does not exceed $3,000, regardless of the use to which the property is put.''

In *Smith v. Kay,* supra, the doctrine of *Moody v. Baker,* 142 Or. 559 (20 P. (2d) 1069), is recognized and approved. In the case at bar, we do not recede therefrom. The doctrine of that case is that if a building, which is the actual abode of the homestead claimant, contains other apartments which are rented to tenants, that fact does not destroy the character of the building or the ground upon which it is located as a homestead.

In the case at bar, the testimony as to value, both of the real and the personal property, is conflicting. As to the personal property, we think the trial court was warranted in its finding thereon. As to the real property, by excluding lot 1 and giving consideration to the fact that only an undivided one-half of lot 3 is affected by the order herein, we think that the property set apart as a homestead is not shown to be of a value in excess of $3,000.

The decree of the circuit court is modified by excluding said lot 1 from the property set apart as a homestead and by entering the order setting apart said homestead nunc pro tunc as of the 5th day of December, 1935, instead of entering it as of the 22d day of November, 1935, and, as thus modified, said decree is affirmed.

CAMPBELL, C. J., and BELT and ROSSMAN, JJ., concur.