Argued January 14; reversed March 9, 1943

IN RE LAUGHLIN'S ESTATE
LAUGHLIN *v.* COSTON ET AL.
(134 P. (2d) 961)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, LUSK and HAY, Associate Justices.

---

*Oren R. Richards,* of Portland, for appellant.

*Will H. Masters,* of Portland (Francis I. Smith, of Portland, on the brief), for respondent heirs.

*Morris A. Goldstein,* of Portland (Goldstein, Glaton & Glaton, of Portland, on the brief), for respondent executor.

BELT, J. This is an appeal from an order denying the petition of a widow to have a homestead set aside for her and also certain furniture as exempt from execution.

The petitioner, Anna Maude Laughlin, and the decedent were married in May, 1940. They lived in an apartment house which decedent managed, but did not own, in the city of Portland. Decedent owned two houses in the city—one at 2028 N. E. Multnomah street and the other at 1534 S. E. 25th street. The Multnomah street house was rented furnished. The 25th street house—the one in controversy—was also rented at $50 a month to Mrs. Dora Bruce who operated a boarding and rooming house. The house had an appraised value of $3,650 and was encumbered by a mortgage on which there was due approximately $1,924.

The decedent had a paralytic stroke in January, 1941, and was placed in a so-called convalescent home. Mrs. Laughlin managed the apartment house for a short period but was obliged to give up such work to take care of her husband. Decedent died testate on June 7, 1941, leaving as his survivors a widow, the petitioner, and children by a former marriage all of whom are of age and are defendants herein. Decedent's widow rejected the will and elected to have the probate court set aside a homestead to her.

About three months before the death of her husband, the petitioner, who was in dire financial circumstances, went, at the request of her husband, to the boarding house on 25th street for the purpose, she says, of "making it her home." Mrs. Laughlin testified that her husband told her to go over there and "make that my home and that when he got better he would come over there." She said that, in keeping with his instructions, she packed their things and some of the furniture and went to the house on 25th street to make it her home and that she has been there ever since. She had no money and no other place to go.

Mrs. Edna Martin testified that she heard decedent tell his wife, "That's the place for you to go. That is our home and you can go there to make that your home."

Mrs. Margaret Bryant, a nurse who cared for decedent, testified that he told her, "I'll soon be able to walk home that far (referring to the house in question) and that will be our permanent home."

Mrs. Laughlin also thus testified on cross examination:

"Q. Isn't it a fact that you went in there as Mrs. Bruce's tenant? A. No, I didn't go as a tenant.

"Q. How did you go? A. Well, I just went in, and she knew that I was Mr. Laughlin's wife, and I told her I wanted to *reserve part of the household*, and she even moved her fruit out of here, the fruit room, so I could have a room for my own, and she just about turned me loose into everything because she felt that Mr. Laughlin sent me, and she knew he sent me there, *and it was all right with her*. Of course I didn't give her any orders about how she should run her boarders or anything." (Italics ours.)

At such time Mrs. Bruce was holding the premises under a month to month rental as the three-year lease had expired a few months prior thereto. It appears that the rent had become delinquent and there was "$100 to $150" due.

Relative to her occupancy of the house, Mrs. Laughlin testified:

"Q. After you moved in there, into this apartment, or into this house, Mrs. Laughlin, this next month, say for the month of March, do you know how much rent Mrs. Bruce paid? A. In March? Oh, no, I don't know; I couldn't say exactly what she paid.

"Q. Was it a reduced amount? A. Well, she would—she was bringing up some back pay, so it would be more; it wasn't as much in actual cash, but you understand my board came out of that, and she was bringing up her back pay.

"Q. How much credit was she to get for you? A. Well, I think about—I think she was to have— to bring up sixteen and a quarter of her back pay each month, and then I guess she charged me about—

\*　　　\*　　　\*　　　\*　　　\*

"A. About sixteen—it would be about thirty-two fifty, I think, all told, or something like that.

\*　　　\*　　　\*　　　\*　　　\*

"Q. In the event, Mrs. Laughlin, that, say, there were maybe two vacant rooms now, and she wanted to rent them, would you have anything to say about that at all? A. No, I don't reserve that part of the house.

"Q. So that she still has control of the House? A. Yes, she rents the house, she rents the rooms, and I just reserve a part."

The tenant, Mrs. Bruce, did not testify.

■ The petitioner occupied a portion of the house as her home. The fact that she leased the remainder of the house for business purposes does not deprive her of her homestead rights in such property: *Moody v. Baker*, 142 Or. 559, 20 P. (2d) 1069; *Smith v. Kay*, 153 Or. 80, 54 P. (2d) 1160, 55 P. (2d) 794. As said in *Re Potter's Estate*, 154 Or. 167, 59 P. (2d) 253, referring with approval to *Smith v. Kay*, supra:

"The doctrine of that case is that if a building, which is the actual abode of the homestead claimant, contains other apartments which are rented to tenants, that fact does not destroy the character of the building or the ground upon which it is located as a homestead."

Also see: 26 Am. Jur. 51, Homestead § 83, and cases in note 114 A. L. R. 226. If, in the instant case, the lease included the entire premises, a different question would be presented.

■■ This court, in keeping with the well-established rule in other jurisdictions, liberally construes homestead laws to the end that the beneficent purposes of such remedial legislation be accomplished. It is the policy of the law to preserve a home for a widow who may live sheltered beyond the reach of urgent creditors or economic misfortune. The stability and welfare of

the state demands the preservation of the home: *Moody v. Baker,* supra; 26 Am. Jur. 14, Homstead § 12; *Banfield v. Schulderman,* 137 Or. 167, 296 P. 1066, 298 P. 905, 89 A. L. R. 504; *De Haven & Son Hardware Co. v. Schultz,* 122 Or. 493, 259 P. 778; *Paulson v. Hurlburt,* 93 Or. 419, 183 P. 937.

■ In the light of this record—which in many particulars is vague and incomplete—we are called upon to determine whether the petitioner was merely another "roomer and boarder" or whether she was occupying the 25th street house as a homestead within the meaning of the statute. Section 6-1301, O. C. L. A., provides that "The homestead must be the actual abode of and occupied by the owner, his or her spouse  *  *  *." From the language of the act it is clear that the mere fact that decedent never occupied the premises in question as a home would not, in itself, preclude his widow from exercising the right of homestead exemption: Bancroft's Probate Practice, § 711.

■ We are convinced from the uncontradicted evidence that the widow in this case intended to make the 25th street house her bona fide residence and home. She reserved a part of the house as her home and permitted the tenant to occupy the remainder thereof. The effect of the arrangement which petitioner had with the tenant was to modify the lease. Mrs. Bruce charged petitioner $16.25 per month for her board which sum was deducted each month from the amount of delinquent rent. In consideration of the reservation of room by petitioner, the previous rental of $50 per month was reduced by $16.25, leaving the rental as modified in the sum of $33.75. As we view the transaction, although it is not free from doubt, there was no rental of the room by Mrs. Bruce to the petitioner. Such room was not included in the lease as modified.

■ Petitioner asks that furniture be set aside to her as exempt from execution. Unfortunately, the record fails to identify any furniture except that which she took with her to the 25th street house, which she will be entitled to have set aside. The remainder of the furniture is in the Multnomah street house which was rented furnished. Such furniture is not in "actual use" by her, as required by § 6-1201 (5) O. C. L. A., and she therefore cannot, at this time, have it set aside as exempt from execution.

The order is reversed and the cause remanded with directions to set aside the homestead and personal property in accordance herewith.

Petitioner is entitled to costs and disbursements.