**In re Jeffrey Brian McVAY and Pamela Arnold McVay, Debtors.**

**Bankruptcy No. 692–60163–R13.**

United States Bankruptcy Court,
D. Oregon.

Jan. 15, 1993.

Brian D. Green, Lincoln City, OR, for debtor.

George C. Reinmiller, Portland, OR, for First Union Mortg. Corp.

James Ray Streinz, Russell B. Weed, McEwen, Gisvold, Rankin & Stewart, Portland, OR, for Transamerica Financial Services.

Fred Long, Eugene, OR, Trustee.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE, Bankruptcy Judge.

This matter comes before the court for confirmation of the debtors' proposed Chapter 13 plan dated January 9, 1992 (the plan). Two creditors have objected to confirmation of the plan, First Union Mortgage Corporation (First Union) and Transamerica Financial Services (Transamerica).

## PROCEDURAL BACKGROUND

The debtors filed their petition for relief herein under Chapter 13 of the Bankruptcy Code on January 14, 1992. The adjourned confirmation hearing was held on September 30, 1992. The debtors appeared personally and through counsel. Other appearances were by Fred Long, the Chapter 13 trustee, both First Union and Transamerica appeared through counsel. The court heard the testimony of witnesses, received evidentiary exhibits and heard the argument of counsel at the hearing.

At the conclusion of the hearing, this court made certain findings of fact and conclusions of law. The court ruled that First Union, the holder of a first trust deed upon certain real property owned by the debtors was adequately protected by the terms of the proposed plan and overruled First Union's objection to confirmation.

Two questions were taken under advisement; (1) does the plan violate the provisions of 11 U.S.C. § 1322(b)(2) as the plan applies to Transamerica; and (2) since Transamerica's security interest extends to certain improvements, equipment and fixtures, does that render 11 U.S.C. § 1322(b)(2) inapplicable because Transamerica's security interest is not limited to "real property" that is the debtors' principal residence? The court also established a post-hearing briefing schedule. All post-hearing briefs have now been filed and the matter is ripe for decision.

## FACTUAL BACKGROUND

The following pertinent facts have been found by the court as a result of the September 30, 1992 confirmation hearing.

The debtors own real property located at 843 S.W. 50th Street, in Lincoln City, Oregon known as the Coastwood Inn (the property) which serves a dual purpose. It is both a bed and breakfast establishment and the debtors' principal residence. In addition to living quarters for the debtors, the property contains four guest rooms, each with its own bath and other amenities. The debtors testified that the majority of the property is used for guest purposes.

Debtors purchased the property in March, 1990 obtaining a loan from Transamerica to finance the purchase. When the debtors applied for the loan from Transamerica, they estimated that their rental income from the property would be $350 per month. At the time they obtained the loan, Transamerica was aware of the mixed use of the property. The prior owners of the property had also used it as a bed and breakfast. The debtors have not changed the use to which the property is put.

The plan proposes to modify the terms of the loan agreement with Transamerica by reducing the payments to Transamerica pending the sale of the property. The plan contemplates that the property will be sold within 18 months to pay creditors.

Transamerica objected to confirmation of the plan contending that the plan impermissibly modifies their secured claim contrary to provisions of 11 U.S.C. § 1322(b)(2). Transamerica holds a note secured by a second trust deed on the property. Transamerica's security interest appears to extend to improvements, equipment and fixtures.

## ISSUES

1. Since the property is being used both as the debtors' principal residence and as a business, does 11 U.S.C. § 1322(b)(2) prohibit the modification of the terms of the loan to Transamerica?

2. Do the terms of the trust deed which grant Transamerica a security interest in certain named improvements, equipment and fixtures render 11 U.S.C. § 1322(b)(2) inapplicable because Transamerica's security interest is not limited to "real property that is the debtors' principal residence"?

## DISCUSSION

All statutory references are to the Bankruptcy Code, Title 11 U.S.C. unless otherwise indicated.

The operative statute, § 1322(b)(2), provides, in pertinent part, as follows:
... the plan may—

\*   \*   \*   \*   \*   \*

(2) modify the rights of holders of secured claims, other than a claim secured *only* by a security interest in real property that is the debtor's principal residence.... (emphasis added)

There is a continuum of situations in which the mixed-use question might arise. Many homes have a room used for an office or room for the storage of business equipment, tools, etc. On the other end of the scale, a debtor could own a factory or large office building with living quarters for the debtor as the debtor's principal

residence. The challenge has been for courts to find a rationale for determining, under the circumstances presented in mixed use cases, whether the phrase "secured only by a security interest in real property that is the debtor's principal residence", places restrictions on the modification of such secured claims.

■ Transamerica argues that this court should adopt a test which would use state homestead law to determine whether the property constitutes the debtor's principal residence for the purpose of § 1322(b)(2). It argues that neither the language of § 1322(b)(2), the case law construing § 1322(b)(2) when applied to mixed use cases, the legislative history of the section, nor past practice under the Bankruptcy Act provide a test which is as reliable as the "homestead test."

Under Oregon law a homestead is "... the actual abode of and occupied by the owner, or the owner's spouse, parent or child ...," O.R.S. 23.240. Transamerica maintains that "homestead" and "principal residence" are synonymous, therefore, if real property qualifies as a homestead under Oregon law, it should also be regarded as the principal residence of the debtors for purpose of § 1322(b)(2). Renting or leasing a portion of a house for business purposes does not deprive one of homestead rights in the house. *See In re Laughlin's Estate*, 170 Or. 450, 134 P.2d 961 (1943); *In re Potter's Estate*, 154 Or. 167, 59 P.2d 253 (1936). Under this test, the property, although it is being used for both business and personal purposes, is the debtors' homestead and, therefore, their principal residence. Accordingly, Transamerica contends that Transamerica's rights may not be modified.

This court agrees that if the property qualifies as the debtors' homestead under Oregon law, it may also qualify as their "principal residence" for the purpose of § 1322(b)(2). Since, however, § 1322(b)(2) allows modification of secured claims "... other than a claim secured only by a security interest in real property that is the debtors' principal residence ...," the inquiry cannot end by simply examining the Oregon Homestead Law.

The debtors argue that the court should focus on whether or not there was significant actual commercial use of the property or whether the property has inherent income producing potential. The debtors' arguments have merit.

"The legislative intent behind § 1322(b)(2) was to provide stability in the long term residential housing market." *In re Hildebran*, 54 B.R. 585, 586 (Bankr. D.Or.1985).

> Therefore, the preferred status granted some creditors under section 1322(b)(2) was limited to holders of claims secured *only* by a security interest in the debtor's principal residence. No preferential treatment was given debts secured by property in addition to the debtor's principal residence. Such debts normally are incurred to make consumer purchases unrelated to the home or to enable the debtor to engage in some form of business adventure. In such circumstances the home is mortgaged not for its own sake, but for other purposes, and often is only one of several forms of security given.... Congress granted no extra protection for holders of these types of secured claims, presumably because any impact the bankruptcy laws might have upon them would not seriously affect the money market for home construction or purchase.

*In re Glenn*, 760 F.2d 1428, 1434 (6th Cir.1985).

The courts which have considered the issue of whether or not § 1322(b)(2) prohibits the modification of a secured claim on mixed use property have generally focused upon the actual use of the property to produce income. Along that line, courts have held that § 1322(b)(2) prohibited the modification of secured claims where the security interest included acreage or farm land in addition to the principal residence or dwelling, but the farm land was not actively being farmed for income producing purposes. *See In re Glenn, supra;* and *In re Ballard,* 4 B.R. 271 (Bankr.E.D.Va. 1980); *In re Parrott,* Case No. 386–03650–

H13 (Hess, J.) (unpublished) (Bankr.D.Or. 1988).

On the other hand, courts have allowed a debtor to modify the claims of a secured creditor where the security interest attached to farm land that was actually being farmed for income producing purposes by the debtor, *See In re Hines,* 64 B.R. 684 (Bankr.D.Colo.1986) and *In re Leazier,* 55 B.R. 870 (Bankr.N.D.Ind.1985), or where the debtor derived substantial rental income from the property, *See In re Ramirez,* 62 B.R. 668 (Bankr.S.D.Cal.1986).

In a recent case, a bankruptcy court decided that:

"... the property itself must have some inherent income-producing power."

*In re Lopez,* 138 B.R. 348, 351 (D.Puerto Rico 1992).

Here, a substantial portion of debtor's "principal residence" is devoted to the bed and breakfast operation. Indeed, the majority of the space in the structure is used for that purpose. The debtors are actually using the property as a bed and breakfast establishment for the purpose of generating income. The property clearly has inherent income producing power which the debtors are utilizing.

The fact that Transamerica knew about the mixed use of the property at the time it made the loan to the debtors is significant, notwithstanding Transamerica's argument to the contrary. Since the Congressional purpose behind § 1322(b)(2) was to provide preferred treatment to home lenders, thereby making home loans more available, the fact that Transamerica knew that it was making, in part, a commercial loan is significant since Congress obviously intended no preferred or special protection for commercial lenders in the context of § 1322(b)(2).

## CONCLUSION

Based upon the rationale set forth above, this court concludes that § 1322(b)(2) does not prohibit the debtors, in this case, from modifying the secured claim of Transamerica. Accordingly, the court need not reach the other issues raised by the parties concerning equipment, machinery and fixtures. It follows that the debtors' plan of January 9, 1992 may be confirmed.