**In re Daniel Leslie SCHAYES and Wendy Lucero Schayes, Debtors.**

**No. 2:11–bk–20775–RJH.**

United States Bankruptcy Court, D. Arizona.

Dec. 4, 2012.

210

Cathy L. Reece, Phoenix, AZ, for Debtors.

## OPINION RE PRINCIPAL RES-IDENCE AND APPLICATION OF § 1123(b)(5)

RANDOLPH J. HAINES, Bankruptcy Judge.

The issue here is whether the only home in which the Debtors resided pre-petition, and in which they have continued to reside post-petition, qualifies as their "principal residence" for purposes of 11 U.S.C. § 1123(b)(5).[1] The Debtors maintain it does not qualify as their principal residence because they bought the property for investment purposes, and consequently

---

1. Except as otherwise indicated, all chapter, section and rule references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101– 1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

can modify the debt secured by the residence notwithstanding § 1123(b)(5).

This matter is before the Court on a motion for summary judgment filed by the Debtors. The secured creditor responded to the motion for summary judgment and both parties participated in the oral argument held on August 21, 2012. The court denied the Debtor's motion for reasons stated on the record, and indicated it would issue a written opinion to that effect.

### Undisputed Material Facts

Daniel and Wendy Schayes have engaged in the business of buying, developing, selling, and renting residential properties since 2000.[2] They moved to Phoenix in 2007 and purchased the property located on East Berneil Drive, Paradise Valley, Arizona (the "Berneil property"). It is a 7,500 square foot single family residence. Debtors were obligated by the original financing contract to live in the Berneil property as their principal residence for a period of one year, and the Debtors complied with that requirement and actually lived in the house until sometime in the Summer of 2008.

After living in the property for about a year, Debtors moved to Colorado in 2008 to pursue other business opportunities and develop real property in Colorado. The Berneil property was vacant while the Debtors were living in Colorado. In January 2009, Debtors moved back to Phoenix and lived in another property that they owned in Phoenix. The Berneil property remained vacant for a total of almost three years.

In February 2011, Debtors moved back into the Berneil property and have lived there full time ever since. Debtors filed their Chapter 11 bankruptcy petition on July 20, 2011.

### Debtors' Argument

Debtors argue that the Berneil property should not be deemed their principal residence for purposes of § 1123(b)(5) primarily because they contend that they never intended to use it as their principal residence. Debtors argue that their only intended use of the Berneil property is to use the property for a business purpose, *i.e.* to rent out the property to generate income. They contend that they moved into the Berneil property in February, 2011, solely for the business purpose of putting the Berneil property into a rentable condition and protecting it from further deterioration until it could be rented. They claim it was vandalized while vacant and they have invested a lot of money restoring it to rentable condition, while living there. Their unconfirmed Chapter 11 plan[3] proposes that they will move out of the Berneil property and the property will then be rented. Therefore they argue that they did not and do not intend for the Berneil property to be their principal residence, and that their intention rather than their actual use should be determinative for purposes of § 1123(b)(5).

### Bank of America's Argument

The creditor secured by the Berneil Property, Bank of America, opposed the motion for summary judgment on the grounds that § 1123(b)(5) does apply on the undisputed facts of this case. The Bank argues that the Debtors have inhabited the single family residential home continuously since February 2011, that it is their current residence, and has been their

---

2. Daniel Schayes' previous employment was as an NBA basketball player and a representative of the NBA Player's Association, but he was not so employed when this case was filed on July 20, 2011.

3. The Court denied confirmation of the Debtors' plan on October 31, 2012, and no new plan has been filed since then.

only residence for more than sixteen months. Debtors listed this property as their address on the bankruptcy petition, they claimed the property as their homestead on Schedule C, and they listed the Berneil property as their minor son's address.

The Bank argues that Debtors' position that they "inhabit" or "occupy" this property as their residence, but it is not their "principal residence," defies the plain meaning of the statute, is unsupported by applicable law, and if accepted, would allow any debtor to evade § 1123(b)(5) my merely contending that he bought a home, rather than renting an apartment, solely because it is a better investment, or that he intends to rent out the home sometime in the future. A debtor's principal residence is determined as of the bankruptcy petition date. The only facts relevant to this issue are acknowledged by the Debtors: The property in question is a residential home; the debt to the Bank is secured only by the Bank's liens on the subject property; and Debtors moved into the house in February 2011 and have lived there ever since. The Bank argues that these facts establish that the Berneil property is the Debtors' principal residence, and was the Debtors' principal residence on the petition date. The Bank also notes that Debtor's argument leads to the conclusion that these Debtors have no residence, contrary to the common sense notion that everyone must be somewhere.

**Analysis**

Section 1123(b)(5) provides:

(b) Subject to subsection (a) of this section, a plan may—

. . .

(5) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtors' principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; . . .

The provision is known as the anti-modification provision and it prevents a debtor from modifying claims that are secured only by a debtor's primary residence. If § 1123(b)(5) does not apply, then a plan of reorganization may, pursuant to § 506(a), bifurcate an undersecured claim against the property into a secured and an unsecured claim.[4] The secured portion of the claim would exist to the extent of the value of the collateral, and the amount of the claim that exceeds the value of the collateral would be deemed unsecured. The anti-modification provision is applicable only to a debt secured by a debtor's principal residence.

**Definition of "Principal Residence"**

The Bankruptcy Code does include a definition for a principal residence. Section 101(13A) defines the term "debtor's principal residence" as: "a residential structure if used as the principal residence by the debtor, including incidental property without regard to whether that structure is attached to real property."[5]

---

**4.** The language of § 506(a) provides for the *bifurcation, or splitting, of the claim into se*cured and unsecured portions. Section 506 provides:

(a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the

extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

**5.** The Court notes that § 101(13A) was modified by the Bankruptcy Technical Corrections Act of 2010, Pub.L. 111–327, 124 Stat. 3557 (Dec. 22, 2010), to include the language, "if used as the principal residence by the debtor." Previously, § 101(13A) read: "The term 'debtor's principal residence'—(A) means a

The Debtor contends this definition is a mere tautology that adds nothing to the analysis of when § 1123(b)(5) applies. But in fact it does add a particular focus that is not found in § 1123(b)(5). The definition focuses on how the residential structure is actually used, which could be distinct from the form of the structure, the purpose for which it was constructed, the purpose for which the debtors acquired the property, or their future intended uses.

■ If the language at issue has a plain and unambiguous meaning, and the disposition required by the text is not absurd, the Court's inquiry ends.[6] The Court finds and concludes that the definition of "principal residence" in § 101(13A) unambiguously hinges on how the debtor actually uses the structure, not the debtor's intentions at any point in time.

■ A residence is the place where one actually lives.[7] The Court finds that it does not matter if that place is real property held in fee, if it is a leasehold, or if the debtor is living day to day in her mother's basement and paying no rent. The debtor's residence is where the debtor is living, where she returns to sleep and where she keeps her personal belongings. A deter-mination of residence is based on the objective facts of the case, not anyone's purposes or intentions.[8]

■ This is a significant distinction between a residence and a domicile.[9] A person can have numerous residences, but at any particular time only one domicile. A domicile is defined as a place where a person has a residence in fact plus an intention to return there.[10] While the concept of domicile therefore includes an element of intent, a residence does not: a determination regarding a residence is simply a factual determination of whether the debtor lives in the subject property. My dog has a residence, even if some would contend he lacks the mental capacity to form the requisite intent to have a domicile (though he would dispute that as well).

## For Purposes of the Application of the Bankruptcy Code, What is the Relevant Date for Determining the Debtor's Residence?

■ With a working definition of what a "principal residence" is, the Court must next decide when such a determination is

---

residential structure, including incidental property, without regard to whether that structure is attached to real property; and (B) includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer."

6. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004).

7. Black's Law Dictionary at 1423 (9th ed. 2009).

8. *See e.g. Texas v. Florida*, 306 U.S. 563, 576 (1939) (Discussion concerning change of domicile. "Residence in fact, coupled with the purpose to make the place of residence one's home, are essential elements of domicile." "While one's statements may supply evidence of the intention requisite to establish domicile at a given place of residence, they cannot supply the fact of residence there.").

9. The specified enumeration of both residence and domicile in the Bankruptcy Code, such as in the exemption provisions, § 522(b)(3)(A) and § 522(d)(1), and in the venue statute, 28 U.S.C. § 1408(1), indicates an intention that the legal distinction should be maintained when applying the Code. *See* 28 U.S.C. § 1408(1) (A case under title 11 can be commenced in the district where the debtor has a "domicile, residence, principal place of business in the United States, or principal assets in the United States"); *In re Tomko*, 87 B.R. 372, 374–75 (Bankr.E.D.Pa.1988).

10. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989).

made. There are basically three relevant dates that a court could look to for determining the place of a debtor's residence: First, the contract date, meaning the date the secured debt was incurred or the mortgage was recorded; Second, the date that the bankruptcy petition was filed;[11] or Third, the confirmation date of the debtor's plan of reorganization.

The Debtors acknowledge that the Ninth Circuit Bankruptcy Appellate Panel has recently determined that the petition date is the date to determine the residence question for purposes of § 1123(b)(5) and the Chapter 13 equivalent, § 1322(b)(2).[12] However, Debtors argue that because they had moved out of the property for approximately three years, moved back into the property for the purpose of rehabilitating the property so it could be rented at some time in the future, and given their express statement that the Berneil property was not intended to be used as their "principal residence," they reserve the argument that the confirmation date makes more sense in this case as the date to determine the principal residence. But Debtors also acknowledge that that issue does not need to be addressed at this time because the facts concerning the Debtors' residence are essentially the same today, as they were on the petition date, and as they were at the time of the hearing on confirmation of their plan of reorganization.

The controlling cases in the Ninth Circuit on the issue of when to determine the debtor's principal residence are *Abdelgadir*[13] and *Benafel.*[14] The *Abdelgadir* case is directly on point because it is a Chapter 11 case that construes and applies § 1123(b)(5). The BAP expressly found that it is improper to shift the time for fixing a creditor's claim from the petition date to some future valuation date, such as the confirmation date, because to do so improperly "conflates the analysis of whether a creditor *holds a claim* with a determination of the *value* of that claim." [15]

---

**11.** The Court notes that from a technical sense, the petition date and the date the order for relief is entered do not have to occur on the same date. In an involuntary case filed pursuant to § 303, the order for relief is entered at a later date after a determination has been made by the Court, or when the debtor consents to the entry of the order for relief. See § 303(h). In a voluntary case, like the one presently before the Court, the petition date and the date the order for relief is entered are the same. See § 301(b). For purposes of the case before it, the Court does not make a distinction between the petition date and the date the order for relief was entered because they are the same date, however, the Court acknowledges that in the event of an involuntary case, the date will likely not be the same, and to the extent such a difference makes a distinction, that will have to be determined in a future case.

**12.** The anti-modification provision under Chapter 13 uses identical operative language concerning the modification of a debt secured by a debtor's residence. Section 1322(b)(2) reads:

> (b) Subject to subsections (a) and (c), ... the plan may—
>
> ...
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the right of holders of any class of claims;

**13.** *In re Abdelgadir*, 455 B.R. 896, 902–903 (9th Cir. BAP 2011) (Chapter 11 case; found that it was the petition date, and not confirmation date or the transaction date that controls when to make the determination concerning the debtor's principal residence).

**14.** *In re Benafel*, 461 B.R. 581, 591 (9th Cir. BAP 2011) (Chapter 13 case; found that it was the petition date, and not the transaction date that controls when to make the determination concerning the debtor's principal residence).

**15.** *Abdelgadir*, 455 B.R. at 902 (emphasis in original).

The value of an undersecured creditor's claim—the extent to which it is secured, so long as that is greater than $0.00—is distinct from whether that creditor has a claim that is secured by the debtor's principal residence. For example, while Ninth Circuit case law holds that the value of the secured portion of an undersecured creditor's claim is determined as of the date of the confirmation hearing,[16] for Chapter 13 eligibility purposes whether a debt qualifies as secured or unsecured is determined as of the petition date.[17] This Court finds and concludes that the appropriate date for determining whether a debt is secured by a debtor's principal residence is the petition date.

The Court finds and concludes, based on the undisputed material facts, that the Berneil property was the Debtors' principal residence at on the date the bankruptcy petition was filed. Therefore unless an uncodified exception applies, the debt owing to Bank of America on the Berneil property is subject to the anti-modification provision of § 1123(b)(5).

### Multi–Use Exception

■ Finally, the Debtors do argue there is an uncodified exception to § 1123(b)(5) that applies when the property is not used only as the Debtors' residence. In effect, the Debtors' interpretation adds a second "only" into the statutory language to further limit the application of § 1123(b)(5). Although the statute uses "only" to require the secured creditor to have no other security for the debt, the Debtors construe the statute also to require that the residential structure serve only one function, that of being their principal residence. They argue that even if the Berneil property was their principal residence on the relevant date, it was not only their residence because it also served a more predominate purpose as a business or commercial usage, due to their intention to rent the property in the future.

The Debtor's argument finds no support in the plain language of the Code. There simply is no second "only" in the statutory language of § 1123(b)(5), nor any way to read the one usage of that term to limit the use of the property rather than limiting the extent of the collateral for the secured debt. As previously held, the Court also finds this language to be clear and unambiguous.

Debtors do rely on some language from the Third Circuit decision in Scarborough[18] as holding that "only" restricts the use of the property for it to qualify for the anti-modification provision. Debtors also cite some other cases, in addition to Scarborough, as recognizing some kind of exception based on a multi-use or additional commercial-use theory.[19]

**16.** *Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship),* 115 F.3d 650, 654 (9th Cir.1997) (value of secured creditor's claim should be calculated to include the additional rents collected and sequestered by the debtor up to the confirmation date).

**17.** *In re Smith,* 435 B.R. 637, 648–49 (9th Cir. BAP 2010).

**18.** *In re Scarborough,* 461 F.3d 406, 411 (3d Cir.2006) ("the real property that secures the mortgage must be *only* the debtor's principal residence in order for the anti-modification provision to apply").

**19.** *See, Scarborough, supra* note 18 (security interest in a multi-unit dwelling includes the unit used as the debtor's principal residence and other income-producing rental units); *Lomas Mort., Inc. v. Louis,* 82 F.3d 1 (1st Cir.1996) (security interest in multi-unit structure includes not only debtor's principal residence but other income-producing units); *Adebanjo v. Dime Sav. Bank of N.Y. (In re Adebanjo),* 165 B.R. 98 (Bankr.D.Conn.1994) (security interest in a three-family dwelling includes not only debtors' principal residence but two other rental units); *In re McVay,* 150 B.R. 254 (Bankr.D.Ore.1993) (security interest in a bed-and-breakfast in which the debt-

But *Scarborough* and these other cases are all significantly distinguishable from the facts here. The basis for the uncodified exception in each of these cases was a multiple actual use of the property, not a single actual use as the debtor's principal residence coupled with another intended or hypothetical use. None of these cases find any basis for an exception when there is but one actual use of the property, as the debtor's principal residence. Nor does any of them suggest that the debtor's purposes or intentions, rather than his actual use, governs the application of the anti-modification provision.

But even if *Scarborough* were not factually distinguishable, it is not controlling law in the Ninth Circuit and is not supported by the plain language of the statute. The better statutory analysis seems to be that other, additional actual uses have no relevance under the plain language of the Code, so long as there is an actual use as the debtor's principal residence. That seems to be the analysis of the recent decision out of Idaho.[20] It implies, correctly, that there is no language in the Code that suggests once the additional commercial use of the property extends beyond some magical tipping point, the property ceases to be the debtor's principal residence. There is no ambiguity in the Code's language that would necessitate a court resorting to legislative history to determine if Congress intended a multi-use exception. And even if there were such an ambiguity, there does not appear to be any evidence of such a legislative intent. The mere fact that the motivating purpose may have been to maintain lower interest rates for single family residential loans does not mean that Congress intend-

ed to except multi-use structures from the scope of the provision—that is pure judicial guesswork as to what Congress might have intended if it had ever thought about the issue, when there is no evidence that it did.

But there is no need for the Court to make such a determination at this time. This residential structure was not being used for any kind of multiple use on the petition date. This was not a property where the Debtors lived in one unit and there were other tenants living in other units on the real property. This was not a property where the Debtors were living in the property that was also used to generate some kind of income or that had another commercial use. The undisputed facts of this case are that the Debtors lived in the property, they vacated the property, and they returned to the property all before the bankruptcy petition was filed. Debtors may have offered the property as a rental during the time they were not living there, but it is undisputed that they have never actually rented the property, or otherwise used it for a commercial purpose, and certainly were not doing so on the petition date. The property has in fact only been used as a residence by these Debtors since the petition. Based on the facts of this case, the Court cannot find that there ever has been an actual commercial use of the property since the petition. Debtors' intention to change the use of the property at some point in the future does not disturb the nature of the property on the petition date, and no language of the Code nor any case law suggests this mere intention qualifies the property for an uncodified exception to § 1123(b)(5).

ors occupied one bedroom and rented the three other bedrooms).

**20.** *In re Wages*, 479 B.R. 575 (Bankr.D.Idaho 2012) (§ 1123(b)(5) does not require that the property be used exclusively as the debtor's residence).

## Conclusion

Based on the foregoing, the Court finds and concludes that the Berneil property was the Debtors' only and principal residence on the petition date. The debt owing to Bank of America is only secured by an interest in that residential real property. Section 1123(b)(5) applies to the Bank of America debt, so the plan of reorganization may not modify the terms of that debt and security interest.

Accordingly,

IT IS ORDERED denying Debtors' motion for summary judgment, and granting summary judgment in favor of the Bank of America.