**In re Mary B. RAMIREZ, Debtor.**

**Bankruptcy No. 86–00744–LM13.**

United States Bankruptcy Court, S.D. California.

July 16, 1986.

Donald L. Scoville, Plourd, Blume, Scoville & Breeze, El Centro, Cal., for debtor.

L.J. Buckley, Laguna Hills, Cal., Jerry Suppa, San Diego, Cal., for Marathon.

### MEMORANDUM DECISION

LOUISE DeCARL MALUGEN, Bankruptcy Judge.

Marathon Home Loan Company ("Marathon") holds two trust deeds on real property belonging to debtor Mary Ramirez ("Ramirez"), which secure two notes in the amount of $49,000 and $12,000. Ramirez executed the notes in late 1984. Both notes mature within one year of February 7, 1986, the date Ramirez filed her Chapter 13 petition. The notes carry interest rates of 18% and 19%, respectively.

Ramirez resides on the property and derives 46% of her net income from two rental units located on it. Ramirez' proposed plan modifies Marathon's rights by extend-

ing the due dates of the notes and reducing the interest rates on them. Ramirez proposes to repay Marathon over ten years, and to reduce the interest rates on both notes to 10% per annum.

Marathon raises the objection that its claim is secured solely by property that is Ramirez' principal residence, and therefore her proposed modification of Marathon's rights violates 11 U.S.C. § 1322(b)(2).

## ISSUES

I. May a Chapter 13 plan modify the contractual rights of a creditor whose claim is secured by real property which is not only the debtor's principal residence, but also generates substantial rental income for her?

II. If Ramirez may modify Marathon's rights, is her proposed plan otherwise confirmable?

## DISCUSSION

I. *Modification of Marathon's Rights.*

■ Section 1322(b)(2), in pertinent part, provides that a Chapter 13 plan may,

... modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence....

Only two courts have addressed the above-quoted provision in the context of the instant facts: *In re Ballard*, 4 B.R. 271 (Bankr.E.D.Va.1980); *In re Glenn*, 760 F.2d 1428 (6th Cir.1985). Both courts' analyses focused on the debtor's actual use of the subject property.

In *Ballard*, the debtor's principal residence was located on 118 acres. The bank's debt was secured by the entire parcel. The *Ballard* debtors argued that a majority of the property by which the bank secured its claim was farmland, and therefore the bank's claim was not secured only by a security interest in real property that was the debtors' principal residence.

The Ballards owned three horses and derived only $40 per month in farm income.

However, Mr. Ballard was an attorney by profession, and earned $1,500 per month in income from his law practice. His wife worked in the home. The Ballards' land was not amenable to subdivision.

The court stated:

... In the absence of a showing that the debtors *clearly used the farm for any principal purpose other than their residence*, [this court] must consider the entire ... property as their principal residence. 4 B.R. at 276. (emphasis added)

The *Ballard* court did not find sufficient evidence to support such a showing, and held that all the entire 118 acre farm was the debtors' principal residence.

The *Glenn* creditor had secured its claim with the debtors' house and the land that surrounded it. The debtors maintained that the 50 surrounding acres were not part of their principal residence. The debtors did not farm the 50 acres nor, "use the 50 acres for any purpose other than as their principal residence." 760 F.2d at 1441.

The court stated:

*If the Glenns do not in fact put the land to any other use*, it is difficult to see why the land should be found to be anything but a part of their residence for the purposes of Chapter 13. *Id.* (emphasis added)

The language of the foregoing decisions implies that both courts would have permitted the modifications of the obligations secured by the real property, had the debtors been able to prove that the property was actually used for some purpose other than as the debtors' principal residence.

In the instant case, Ramirez' actual use of the property, which is collateral for Marathon's loan, is as (1) residential property, and (2) rental property. Ramirez' uncontroverted declaration states that Marathon considered her rental income when making the loans. In fact, Marathon apparently told Ramirez that her rental income of $600 per month, when combined with her $700 per month net wages, would give her sufficient income to repay the loans. Thus,

with respect to both Ramirez' use of her property and the income it generates, the instant facts are distinguishable from those in both *Ballard* and *Glenn.*

Marathon's security interest extends to Ramirez' rental property. Therefore, its claim is not secured only by property that is the debtor's principal residence. Accordingly, Ramirez' proposed modification of Marathon's contractual rights does not violate § 1322(b)(2).

## II. *If Ramirez May Modify Marathon's Rights, Is Her Proposed Plan Otherwise Confirmable?*

■ Ramirez proposes to modify Marathon's notes by extending them for ten years. She also proposes to make payments on the notes, as modified, during her 60–month Chapter 13 plan, and to continue those payments after she has completed her plan until the notes are fully amortized.

Section 1322(b)(5) states that a Chapter 13 plan may, "... provide for the ... maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." The primary purpose of § 1322(b)(5) is to provide a debtor, "... a means to restore and maintain his currency on a *long*-term debt *not* otherwise provided by the plan." *In re Grubbs,* 730 F.2d 236, 245 (5th Cir.1984) (emphasis added).

The *Grubbs* debt was a three year home mortgage that, under its non-accelerated terms, matured within the term of Grubbs' proposed plan. The *Grubbs* court, sitting *en banc,* observed that the debt, "... was not a long-term mortgage having its last payment becoming 'due after the date on which the final payment under the plan is due' ... [and was therefore] not a long-term debt within the plan provision contemplated by § 1322(b)(5)." 730 F.2d at 247. Nevertheless, the court permitted Grubbs to cure the pre-petition defaults, utilizing the cure provisions of § 1322(b)(3), and requiring the debtor to make that cure within the term of the plan. *Grubbs* held that

§ 1322(b)(5) does not apply to those short-term debts that mature *within* the period of the proposed plan, but rather applies only to long-term debts that become due by their own terms after the date on which the final payment under the plan is due.

Permitting Ramirez to extend the note maturity dates beyond the plan term and maintain current payments on the modified notes under the maintenance provisions of § 1322(b)(5) would violate § 1322(c)'s limitations on the length of Chapter 13 plans. Section 1322(c) provides that courts, "... may not approve a [plan] period that is longer than five years." The modification of claimholders' rights is a part of the plan. 11 U.S.C. § 1322(b)(2). If that modification extends a repayment period beyond the authorized period of a plan, the modification has, in effect, extended the period of the plan itself. Such use of § 1322(b)(2) to shoehorn a debt into the provisions of § 1322(b)(5), taken to its logical conclusion, would nullify the clear limitations of § 1322(c).

Therefore, although Ramirez may modify the Marathon notes, she may not extend the term for their full payment beyond the term of her Chapter 13 plan. Accordingly, this Court must deny confirmation of the debtor's Chapter 13 plan as presently proposed. Debtor shall have until August 5, 1986, to file and serve a modified plan.

This Memorandum constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. Counsel for debtor shall prepare an order in conformance with this Decision within ten (10) days from the date of entry hereof.