In the Matter of Carmelo TORRES LOPEZ and Felicita Alverio Rodriguez, Debtors.

No. 91–1370 (JAF).
Bankruptcy No. 89–02571 ESL.

United States District Court,
D. Puerto Rico.

April 2, 1992.

Antonio I. Hernández–Santiago, Hernandez & Vidal, San Juan, P.R., for appellant.

Victor Gratacós–Díaz, Caguas, P.R., for appellees.

## OPINION AND ORDER

FUSTE, District Judge.

This is a case on appeal from a final order of the bankruptcy court approving appellee's Chapter 13 plan. The bankruptcy court found that the security interest held by the creditor did not fit into the exception from modification for a claim "secured only by a security interest in real property that is the debtor's principal residence" found in 11 U.S.C. § 1322(b)(2). The bankruptcy court also confirmed the plan under 11 U.S.C. § 1325(a)(3), finding that it had been proposed in good faith. Appellant is challenging both rulings. Appellee has filed no opposing brief.

### Facts

Appellees Carmelo Torres López and his wife Felicita Alverio Rodríguez ("debtors") defaulted on a loan they had taken out as a second mortgage secured by their home. Appellant Angel Atanacio Avilés ("creditor") brought a foreclosure action in the Superior Court of Puerto Rico. Parties stipulated that debtors would pay on or before June 15, 1989, a stipulation which the court incorporated into a judgment dated May 15, 1989. On June 16, 1989, debtors filed for Chapter 13 under the Bankruptcy Code and submitted a plan which modified the rights of the creditor by not requiring payment of the claim in full. Debtors argued that since they use their residence as a place of business, as well as a residence, the property was not protected from modification under 11 U.S.C. § 1322(b)(2). The bankruptcy court accepted this argument and approved the plan. The creditor now appeals that determination of the bankruptcy court.

### Discussion

■ This court, in its capacity as an appellate court for final decisions from the bankruptcy court, may conduct a *de novo* review of all findings of law made by the bankruptcy court. *In re Comer,* 723 F.2d 737, 739 (9th Cir.1984). It may also review all findings of fact according to a clearly erroneous standard. Norton, *Bankruptcy Rules,* R. 8013 (1992); *see also In re G.S.F. Corp.,* 938 F.2d 1467, 1475 (1st Cir.1991). The legal issues presented here are whether 11 U.S.C. § 1322(b)(2) protects creditor's claim from modification in a Chapter 13 context and whether the debtor submitted his Chapter 13 plan in good faith.

### Section 1322(b)(2)

■ Subsection (b)(2) was added to 11 U.S.C. § 1322 in order to protect home lenders by prohibiting home owners from modifying debts wholly secured by home mortgages. *In re Seidel,* 752 F.2d 1382 (9th Cir.1985); *see also,* K. Lundin, *Chapter 13 Bankruptcy,* vol. 1 § 4.34 (1990).[1] There are two lines of cases regarding the question of what kind of loans are to be protected by subsection (b)(2): one line finds that Congress only meant to protect the long-term home mortgage industry, *In re Shaffer,* 84 B.R. 63, 67 (Bankr.W.D.Va.

---

1. "The Legislative history to § 1322(b)(2) indicates that the exception to modification of home mortgages was intended to encourage home buying, to preserve the stability of the home mortgage industry, and to protect those who loan money to purchase private residences." *Id.* at 4.30.

1988); *United Cos. Financial Corp. v. Brantley,* 6 B.R. 178 (Bankr.N.D.Fla.1980); *In re Neal,* 10 B.R. 535 (Bankr.S.D.Ohio 1981); *In re Morphis,* 30 B.R. 589 (Bankr. N.D.Ala.1983); *In re Lindamood,* 34 B.R. 330 (Bankr.W.D.Va.1983); *In re Bruce,* 40 B.R. 884 (Bankr.W.D.Va.1984); while the other line finds that any security interest in real property of the debtor that is secured by the debtor's principal residence is protected from modification. *In re Hynson,* 66 B.R. 246 (Bankr.D.N.J.1986); *In re Hobaica,* 65 B.R. 693 (Bankr.N.D.N.Y.1986); *In re Simpkins,* 16 B.R. 956 (Bankr. E.D.Tenn.1982). However, there is a third way to interpret subsection (b)(2), and that is in conjunction with 11 U.S.C. § 506. Section 506 requires the bifurcation of the secured and unsecured portions of an undersecured debt. Some courts have applied this to loans secured by residential property. *In re Hougland,* 886 F.2d 1182 (9th Cir.1989); *In re Diquinzio,* 110 B.R. 628 (Bankr.D.C.R.I.1990).[2] Under this interpretation, section 506(a) permits a Chapter 13 plan to modify the unsecured portion of a claim secured by a debtor's principal residence.

This interpretation seems to solve the conflict between the first and second line of cases discussed above. This court is persuaded by the reasoning of the court in *In re Shaffer,* 84 B.R. at 66. It argues that "[i]t is hardly conceivable that Congress could have intended that Section 1322 protect subordinate fourth or fifth or sixth liens which in fact may totally lack equity security in the property." *Id.* Other courts have pointed out that a wide interpretation of the exception to modification in subsection (b)(2) would encourage the industry to design all loans so that they would be secured by real estate that is the principal residence in order to take advantage of (b)(2) protection. *In re Morphis,* 30 B.R. at 592. Applying section 506(a) to a loan secured by a principal residence, thus

allowing modification of the unsecured portion of the debt, addresses these concerns. This way only that portion of the claim actually secured by the value of the residence is protected under subsection (b)(2). This prevents abuse of the provision while still allowing protection of the home mortgage industry as intended by Congress. It also conforms with the explicit language of the statute.[3]

In the instant case, the bankruptcy court never explicitly stated which position it adopted. Since it went on to consider a possible alternative to the exception in subsection (b)(2) based on the definition of a residence, we assume it adopted the second approach that all security interests fall under section 1322(b)(2). However, despite the lack of First Circuit authority on this topic, and in the face of division among the courts, we feel that the middle road is best.

We remand the case to the bankruptcy court for a determination of what portion of the creditor's loan is actually secured by the value of the residence according to section 506(a). If any portion should be found to be unsecured under this section, that portion will be subject to modification.

*Debtor's Principal Residence*

■ The issue which the creditor raises on appeal is whether debtor's property constitutes a residential property within the meaning of the statute. The bankruptcy court found that debtor's principal residence was also his place of business. Since the exception to the modification of secured claims in subsection (b)(2) includes property which is *only* the debtor's principal residence, courts have found that claims secured by property which is also income producing may be modified. *In re Ramîrez,* 62 B.R. 668 (Bankr.S.D.Cal.1986) (property containing debtor's residence also included two rental units which produced

---

**2.** *In re Mitchell,* 125 B.R. 5 (Bankr.D.C.N.H. 1991), went the other way, holding that Chapter 13 debtors were not allowed to bifurcate the security interest of a mortgagee on residential real property into secured and unsecured portions for purposes of proposing a plan.

**3.** *Section 1322*

(b) Subject to subsections (a) and (c) of this section, the plan may—
  (2) modify the rights of holders of secured claims, other than a claim secured only by a

forty-six percent of debtor's net income). Any security, in addition to the residence itself, which might tend to oversecure the creditor, has been found to take the residential mortgage outside of the protection of subsection (b)(2). *In re Klein,* 106 B.R. 396, 400 (Bankr.E.D.Pa.1989) (court held that creditor's security interest in "rents, issues, and profits" of the property, as well as in plumbing and heating, placed that security interest outside of the protection of section 1322(b)(2)). Other cases which have taken residential property outside of the exception include property which also included an office building, *In re Hink,* 81 B.R. 489 (Bankr.W.D.Ark.1987), property that included an eighty-acre tract of agricultural land, *In re Leazier,* 55 B.R. 870 (Bankr.N.D.Ind.1985), and property that is primarily agricultural, *In re Hines,* 64 B.R. 684 (Bankr.D.Colo.1986). Creditor makes the argument that a place of business is not equivalent to income-producing property. Reading the cases listed above, the legal standard being established supports this argument: the property itself must have some inherent income-producing power. The mere fact that plaintiff's place of business is located on the premises does not imbue debtor's property with income-producing potential. Since the property here has no inherent income producing power, it is not excepted under subsection (b)(2) on that basis.

We remand to the bankruptcy court for a determination of whether the property itself produces any income. However, the mere presence of the business on the property is not enough to take it outside of the protection of subsection (b)(2).

### Good Faith

■■■ Section 1325(a)(3) establishes that the court may only confirm a Chapter 13 plan that has been proposed in good faith. Creditor argues that the current plan was not proposed in good faith for the following reasons: it did not meet the liquidation value established, Chapter 7 was more appropriate than Chapter 11, the secured creditor would not be paid for two years,

and the debtor was already nine months in arrears. The good faith standard, however, is quite broad: "a Chapter 13 Plan is not proposed in good faith if the sole purpose of filing is to frustrate the right of a secured creditor to enforce a mortgage." *In re Hamilton,* 51 B.R. 550 (Bankr. M.D.Fla.1985). The good faith of the plan is determined after considering the debtor's entire circumstances. *In re Rimgale,* 669 F.2d 426, 432 (7th Cir.1982). The court has the duty to make a thorough analysis of the facts on a case-by-case basis. *In re Báez,* 106 B.R. 16 (Bankr.D.P.R.1989). Here, where the needs of the debtor must be balanced with the interests of the creditor, *In re Energy Resources Co.,* 871 F.2d 223, 230 (1st Cir.1989), the court must undertake to make difficult determinations of fact. The bankruptcy court found that the debtor's income is sufficient to fund the plan, that it is stable and reliable, that living expenses are modest, that the attorney's fees are reasonable, that the duration of the plan is reasonable, that the debtor has other debts, that this is the debtor's first filing, and finally, that the plan does not place an undue administrative burden on the trustee. These are all considerations the court must take into account when determining whether the plan was submitted in good faith. *In re Báez,* 106 B.R. at 19. The court's determination that the plan was submitted in good faith was not erroneous. There is nothing to indicate that the plan was submitted solely to frustrate the creditor. This court finds that the bankruptcy court correctly determined the debtor's good-faith motivations in filing this plan.

### Conclusion

This court finds that the Chapter 13 plan was submitted in good faith. We also find that, although the loan is secured solely by the debtor's residence, section 1322(b)(2) is subject to section 506(a). Therefore, only the secured portion of the loan as understood under section 506(a) is subject to modification. Otherwise, the claim is protected under subsection (b)(2) to the extent that the property is not itself income-pro-

---

security interest in real property that is the debtor's principal residence, or of holders of

unsecured claims, or leave unaffected the rights of holders of any class of claims.

ducing. We REMAND for a determination of whether any portion of creditor's claim is unsecured and whether the property itself is income-producing.

IT IS SO ORDERED.