**In re Richard R. ZABLONSKI, Susan M. Zablonski, Debtors.**

**Richard R. ZABLONSKI and Susan M. ZABLONSKI, Plaintiffs,**

**v.**

**SEARS MORTGAGE CORPORATION, Defendant.**

**Bankruptcy No. 92–41629–JFQ. Adv. No. 92–4111.**

United States Bankruptcy Court, D. Massachusetts.

May 3, 1993.

Edwin H. Howard, Bonville & Howard, Fitchburg, MA, for debtors/plaintiffs.

Holly K. Haris, Driscoll & Davis, Marshfield, MA, for Sears Mortgage Corp./defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JAMES F. QUEENAN, Jr., Chief Judge.

On March 21, 1989, Richard and Susan Zablonski (the "Debtors") obtained a loan from Northern Mortgage Company, using the proceeds to purchase residential real estate located at 9 Ford Street, Gardner, Massachusetts (the "Property"). The Property is a two family home. The Debtors occupy one unit as their primary residence. The other unit is rented and generates $500 per month in income for the Debtors. The loan was evidenced by a $113,200 note payable over thirty years, bearing interest at 10.5% and secured by a first mortgage on the Property. The note calls for a monthly payment of $1,254.00. Sears Mortgage Corporation ("Sears") is the assignee of the note and mortgage.

On May 26, 1992, the Debtors filed a joint petition for relief under Chapter 13. As of the petition date, the Debtors' outstanding obligation to Sears was $132,-264.98, which includes $20,608.86 in arrearage. The parties stipulate that the fair market value of the Property is $82,000.00.

The Debtors seek the following relief in their complaint: (i) bifurcation of the Sears claim into a secured claim of $82,000 and an unsecured claim of $50,264.98; (ii) avoidance of the Sears mortgage to the extent it secures a claim in excess of $82,000; (iii) allocation of the $20,608.86 prepetition arrearage to the $82,000 secured claim; and (iv) approval of a plan provision calling for the Debtors to make monthly payments on the mortgage note of $1,254.00, which are the monthly payments required under the note, until the Debtors have paid $82,000 of principal plus interest in accordance with the original amortization schedule under the note applicable to postpetition payments. Sears has filed separate motions seeking dismissal of the case and summary judgment on the complaint. Sears also moves for relief from the automatic stay in order to foreclose its mortgage.

The Debtors are entitled to some but not all of the requested relief. They may bifurcate the claim and they may pay the secured claim as they request. They must also, however, make equal monthly payments on the $20,608.86 arrearage over the life of the plan. And they are not now entitled to avoid the mortgage to the extent it secures a claim in excess of $82,000. The Debtors may obtain a discharge of the mortgage when their postfiling monthly payments of $1,254.00 total $82,000 in principal plus interest in accordance with the amortization schedule under the note applicable to the payments due postpetition.

I will not set forth a long dissertation of the law governing this complex and divisive topic. My colleague, Judge Feeney, has recently done that very well. *In re Richards*, 151 B.R. 8 (Bankr.D.Mass.1993). The Supreme Court, moreover, will soon finally resolve these issues. It has accepted *certiorari* in *Nobleman v. American Savings Bank (In re Nobleman)*, —— U.S. ——, 113 S.Ct. 654, 121 L.Ed.2d 580 (1992).

Judge Feeney in *In re Richards* granted all the type of relief requested here except she declined to allocate prepetition arrearage to the secured portion of the claim, requiring instead that the arrearage be paid over a period not exceeding the life of the plan. I agree with this ruling on the arrearage, for the reason given in *Richards*. Succinctly stated, that reason is this:

the mandate of § 1322(b)(5) concerning arrearage is controlling over § 1325(b)(2) because § 1322(b)(5) applies "notwithstanding paragraph (2) of this subsection."

 I also agree with the interpretation rendered in *In re Richards* of the prohibition contained in subsection (2) against modification of a "[secured] claim secured only by a security interest in real property that is the debtor's principal residence." To harmonize this language with § 506(a), that prohibition must be read to apply to the claim only to the extent it is secured in accordance with the definition of a secured claim contained in § 506(a). There is another reason why § 1322(b)(2) does not bar bifurcation in this case. The claim here is not secured "only" by a mortgage on the Debtors' residence. The Debtors use only one of the two apartments as their residence.

Nor do I believe the Supreme Court's decision in *Dewsnup v. Timm*, —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) prohibits this interpretation of § 1322(b)(2). *Dewsnup* involved an attempt to avoid a lien pursuant to § 506(d). The question under § 1322(b)(2) is one of payment, not lien avoidance. The Second Circuit has concluded *Dewsnup* does not prevent applying bifurcation to § 1322(b)(2). *In re Bellamy*, 962 F.2d 176 (2d Cir.1992).

 I respectfully disagree with *In re Richards* in its immediate avoidance of the claim in excess of the secured amount. That, I think, is prohibited by *Dewsnup*. The Court there prohibited avoidance by a chapter 7 debtor of a lien in excess of its present value. It relied on what it considered to be a basic policy, not rejected by the statute, that a secured claim passes through bankruptcy unscathed. Because of this, the Court construed the reference in § 506(d) to an "allowed secured claim" to have a different meaning than the definition in § 506(a) of an "allowed" claim which is a "secured claim". The Court concluded § 506(d) refers to a claim to the extent the claim is secured at all by a lien, and that § 506(d) grants the right to avoid the lien only to the extent the claim itself

was disallowed for the reasons specified in the subsection.

*Dewsnup* is a striking example of subjugation of statutory language to policy considerations. As discussed, it has no direct application to the payment provisions contained in § 1322(b)(2). But there seems to be no difference between the direct (and partial) avoidance of a lien by a chapter 13 debtor and the avoidance denied the chapter 7 debtor in *Dewsnup*. I realize the Court in *Dewsnup* expressly limited its holding to the facts before it. *Dewsnup* —— U.S. at ——, 112 S.Ct. at 778. But lien avoidance is lien avoidance. This is especially so considering the Court in *Dewsnup* rejected relying upon lack of benefit to the estate as its ground for denying avoidance. I am thus not persuaded that *Dewsnup* permits the use of § 506(d) to avoid a lien in a chapter 13 context. The Second Circuit in *Bellamy* permitted immediate avoidance of the unsecured position. But it did not spell out its reasoning on this issue.

There is little practical difference between now voiding the lien to the extent it secures a claim over $82,000 and requiring that it be discharged upon payment of $82,-000 of principal plus interest. There could be a difference, however, if the property later increases in value and is thereafter sold. If this happens, my holding today would require that the entire net sales proceeds be applied against the balance of the loan as originally constituted.

A separate order has issued on the various motions.

### ORDER

The Defendant having moved for summary judgment, for dismissal of this chapter 13 case, and for relief from the automatic stay, and the court having issued separate findings of fact and conclusions of law, it is hereby

ORDERED, that:

1. all of the Defendant's motions are DENIED;

2. the Plaintiffs have the right to deal with the Defendant's claim under their chapter 13 plan in the manner set forth in

today's separate findings of fact and conclusions of law.