In re Majekodunmi **ADEBANJO** and Rashidat Adebanjo, Debtors.

Majekodunmi **ADEBANJO** and Rashidat Adebanjo, Plaintiffs,

v.

The **DIME SAVINGS BANK OF NEW YORK**, FSB and Ethel Zeisler, Defendants.

Bankruptcy No. 90–51903–13.
Adv. No. 90–5382.

United States Bankruptcy Court,
D. Connecticut.

March 30, 1994.

---

Ira B. Charmoy, Daniel Meister, Charmoy & Nugent, Bridgeport, CT, for the plaintiffs.

Lynn A. Kappelman, Scott J. Krowitz, Paul, Hastings, Janofsky & Walker, Stamford, CT, for the defendant Dime Sav. Bank.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO VACATE JUDGMENT BIFURCATING CLAIM

ALAN H.W. SHIFF, Bankruptcy Judge.

The defendant The Dime Savings Bank of New York, FSB (the "defendant"), seeks an order vacating a judgment which entered August 5, 1991, bifurcating its first mortgage into secured and unsecured claims. *See* § 506(a). The defendant contends that a stipulation it entered into with the debtors on August 27, 1991, requires the application of *Nobelman v. Am. Sav. Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) which compels that result. Because I conclude that the stipulation does not require the application of *Nobelman*, and that the application of *Nobelman* would not, in any event, require the vacation of the bifurcation judgment, the motion is denied.

### BACKGROUND

On October 3, 1990, the debtors commenced a chapter 13 case. On December 19, 1990, the defendant filed a proof of claim in the amount of $203,176.19.[1] On October 29, 1990, the debtors commenced an adversary proceeding against the defendant and another party, seeking to avoid and discharge liens on certain real property to the extent they were deemed unsecured pursuant to § 506(a) and (d). The debtors asserted that the fair market of that real property was $169,000.00 as of the petition date, and in support of that assertion attached to their complaint a copy of an appraisal dated August 14, 1990, valuing the property as of July 18, 1990. The real property was known as 183–187 Taft Avenue, Bridgeport, Connecticut. The appraisal stated on page 2 that the "subject property is improved with a 2.5 story wood frame three family dwelling ... containing 3,095 square feet of finished living area with 15 rooms, 6 bedrooms and 3 baths," and had a three car detached garage.[2] The appraisal indicated on page 3 that the highest and best use of the property was "its current use as a 3 family residential dwelling." All of the comparables used to determine the property's value were also three family dwellings, and the value was calculated on a per-unit basis.

The debtors resided at 185 Taft Avenue, apparently one of the three dwelling units in the building. The debtors' Chapter 13 Statement, item 4(a)(3), filed October 3, 1990, and amended October 17, 1991, disclosed that their income included $1,235.00 per month in rental income. The rental income was about 28 percent of the debtors' total income. As the Statement, at item 14(a), also disclosed that the three-family property was the only real estate the debtors owned, it is apparent that the debtors' rental income was derived from the rental of one or both of the units in which they did not reside. The Chapter 13 Worksheet and Summary, filed January 31, 1992, indicated that the debtors' rental income was considered in determining the feasibility of their plan.

In the adversary proceeding, the defendant did not dispute the debtors' valuation, but argued that § 1322(b)(2) prohibited the bifurcation of its undersecured claim into secured and unsecured components. On January 10, 1991, this court issued its opinion in *Bellamy v. Fed. Home Loan Mortgage Corp. (In re Bellamy)*, 122 B.R. 856 (Bankr. D.Conn.1991), in which it was determined that an undersecured claim secured only by a security interest in real property that was the debtor's principal residence could be bifurcated into secured and unsecured claims notwithstanding § 1322(b)(2). That decision was affirmed by the District Court on June 26, 1991. 132 B.R. 810 (D.Conn.1991). Applying that decision to the instant adversary proceeding, this court entered a judgment against the defendant on August 5, 1991, bifurcating its claim and voiding its lien to the extent it exceeded the property's value.

---

1. While the proof of claim indicated under item 3 that the amount of the claim was $293,176.19, item 4 sets forth what appears to have been the correct figure, $203,176.19. The defendant failed to attach evidence of the perfection of its security interest, as required by item 3 and Rule 3001(d) Fed.R.Bankr.P.

2. The appraisal indicated on page 2 that the first floor was being renovated at the time of the inspection (July 31, 1990) and that the other two floors were "intact."

The defendant filed a notice of appeal on August 14, 1991.

On September 11, 1991, the defendant and the debtors entered into, and this court approved, a Stipulation and Order (the "Stipulation"). After reciting the pendency of the defendant's appeal, the Stipulation provided:

2. The appeal involves a legal issue only as to whether, pursuant to 11 U.S.C. § 506(a) and (d), the Bankruptcy Court is authorized to avoid and discharge as a secured claim amounts owing on a first residential mortgage in a Chapter 13 case.

3. The foregoing issue is identical to the issue involved in *In re Bellamy*, in which the United States Bankruptcy Court for the District of Connecticut entered a judgment in a Chapter 13 case avoiding and discharging as a secured claim a portion of an amount owing on a first residential mortgage and allowing said portion as an unsecured claim (the *"Bellamy* Judgment"). The *Bellamy* Judgment was affirmed by the United States District Court for the District of Connecticut and is currently on appeal to the Second Circuit.

4. Following the exhaustion of all appeals, if the *Bellamy* Judgment is reversed by the Second Circuit or the Supreme Court of the United States, the Judgment entered in this adversary proceeding shall be vacated.

5. In consideration of the foregoing agreement to vacate the Judgment in the event of a reversal of the *Bellamy* Judgment, [the defendant] will withdraw its Notice of Appeal of the Judgment promptly following the so ordering of this stipulation.

On September 19, 1991, the defendant filed a Withdrawal of Notice of Appeal. On February 4, 1992, an order entered confirming the debtors' plan, which treated a portion of the defendant's claim as an unsecured claim. On April 21, 1992, the Second Circuit affirmed the district court's holding in *Bellamy.* 962 F.2d 176 (2d Cir.1992). At that time, no circuit court of appeals had disagreed with the holding in *Bellamy.* No re-

view was sought of the Second Circuit's decision. On August 13, 1992, the Fifth Circuit issued a decision in *Nobleman v. Am. Sav. Bank (Matter of Nobleman),* 968 F.2d 483 (5th Cir.1992), which declined to follow *Bellamy* and the decisions of the other courts of appeals that had addressed the issue. On June 1, 1993, the Supreme Court affirmed *Nobelman.* On September 23, 1993, the defendant filed the instant motion seeking to vacate the bifurcation judgment based on the Stipulation.

## DISCUSSION

### 1. The Stipulation

The goal in construing any contract is to effectuate the intent of the parties. That intent must be ascertained by considering the language of the contract in light of the circumstances surrounding its formation and the motives and purposes of the parties. *Barnard v. Barnard,* 214 Conn. 99, 109–110, 570 A.2d 690 (1990). If its language is clear, the court must give effect to the intent expressed by that language, without regard to "any intention one of the parties may have silently entertained." *In re RBS Indus., Inc.,* 115 B.R. 419, 421 (Bankr.D.Conn.1990). "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." *Downs v. Nat'l Casualty Co.,* 146 Conn. 490, 494–95, 152 A.2d 316 (1959).[3]

The defendant asserts that the Stipulation provided for the vacation of the judgment against it if the holding in *Bellamy* was ever disapproved by either the Second Circuit or the Supreme Court. That is, vacation would be required not only if the order entered by this court in *Bellamy* was actually reversed, but also if the *concept* endorsed by that order was subsequently overruled in any subsequent proceeding before the Second Circuit or the Supreme Court, regardless of when that result occurred. The debtors, on the other hand, argue that the Stipulation is

---

**3.** The debtors assert that the defendant's counsel drafted the Stipulation. *See* Debtors' Memorandum in Opposition to Motion to Vacate Bifurca-

tion Order, filed October 5, 1993, at p. 3. No evidence has been offered on that issue.

unambiguous and provides for the vacation of the judgment in this adversary proceeding only if the *Bellamy* order was reversed on direct appeal.

I agree with the debtors' interpretation. While paragraph 2 of the Stipulation identifies the "legal issue" that was involved in *Bellamy,* it is clear from paragraph 3 that the defined term *"Bellamy* Judgment" refers not to that issue, but to the judgment entered by this court in *Bellamy.* Indeed, the defendant concedes that the term *"Bellamy* Judgment" refers to "the judgment entered by the United States Bankruptcy Court for the District of Connecticut in *In re Bellamy....*" *See Motion* at p. 4 n. 1. While paragraph 3 describes what that judgment did, i.e., "avoid[ed] and discharg[ed] as a secured claim a portion of an amount owing on a first residential mortgage and allow[ed] said portion as an unsecured claim," that language is merely descriptive of that particular judgment. Paragraph 3 describes the *"Bellamy* Judgment" as having been "affirmed" by the District Court and as "on appeal" to the Second Circuit. Judgments are appealed and affirmed, not concepts or issues.

 Further, the condition stated in paragraph 4 is that the *Bellamy* Judgment be "reversed" by the Second Circuit or Supreme Court "[f]ollowing the exhaustion of all appeals."

> To "reverse" a judgment means to "overthrow, vacate, set aside, make void, annul, repeal, or revoke it." *Black's Law Dictionary* 1319 (6th ed. 1990). A judgment reversed by a higher court is "without any validity, force or effect, and ought never to have existed." *Butler v. Eaton,* 141 U.S. 240, 244, 11 S.Ct. 985, 987, 35 L.Ed. 713 (1891). Reversal of a judgment and remand for a new trial places the parties in the same position, insofar as relief is concerned, as if the case had never been tried.

*Wheeler v. John Deere Co.,* 935 F.2d 1090, 1096 (10th Cir.1991) (some citations omitted). There is no right of appeal from a decision of a court of appeals to the Supreme Court. *See* 28 U.S.C.A. § 1254 (West 1993). All appeals were exhausted in *Bellamy* and the judgment was not reversed. Notwithstanding the Supreme Court's holding in *Nobelman,* the parties to the *Bellamy* litigation remained bound by the judgment entered in *Bellamy.* While the Supreme Court did *overrule Bellamy,* in part, some two years after the Stipulation was entered into, its unambiguous language refers to the reversal of *Bellamy* on direct appeal. *See Black's Law Dictionary* 995 (5th ed. 1979) ("A judicial decision is said to be overruled when a later decision, rendered by the same court or by a superior court in the same system, expresses a judgment upon the same question of law directly opposite to that which was before given, thereby depriving the earlier opinion of all authority as a precedent."). Unlike reversal, overruling deprives a judgment of only its *stare decisis,* not its *res judicata,* effect.

The defendant also asserts, without any indication as to the source of its information, that, because there was no conflict among the circuits when the Second Circuit decided *Bellamy,* "the appellant in *Bellamy* ... believed that it was futile to petition the United States Supreme Court for certiorari...." *Motion* at pp. 4–5. The defendant argues that it "would have pursued the Appeal to the highest level, including the Supreme Court," but that it decided not to do so because it would be "duplicative to prosecute the Appeal when it was evident that *Bellamy,* which was on a 'faster' track ... would be pursued to the highest court" by the parties to that litigation. *Id.* at p. 7. Even if I found sufficient ambiguity in the Stipulation to permit the defendant to offer parole evidence of its assertions, the defendant's argument indicates that it was essentially relying on the appellant in *Bellamy* to bring the issue before the Second Circuit and, if necessary, the Supreme Court. While the defendant may have inaccurately believed that the *Bellamy* appellant would petition the Supreme Court for a writ of certiorari, that assumption does not justify the rewriting of the parties' contract. The defendant, having elected to rely on the advocacy skills of counsel for the *Bellamy* appellant, cannot now complain that that counsel elected not to seek certiorari in *Bellamy,* particularly when the defendant ac-

knowledges that that decision was reasonable.

Moreover, if I read the phrase "exhaustion of all appeals" to require that the *Bellamy* appellant petition the Supreme Court for a writ of certiorari, the Stipulation provides no guidance as to what would happen if that event did not occur. The defendant in effect invites me to insert a new provision in the Stipulation that would read: "Provided, however, that in the event the Second Circuit affirms the *Bellamy* Judgment and the *Bellamy* appellant elects not to seek certiorari from the Supreme Court, then the judgment in this adversary proceeding will be vacated if the Supreme Court, in any case other than *In re Bellamy*, considers the issue raised in *In re Bellamy* and disapproves of *In re Bellamy*'s holding on that issue." I must decline that invitation. *See Collins v. Sears, Roebuck and Co.*, 164 Conn. 369, 374, 321 A.2d 444 (1973) ("Where a certain contingency is provided for in a contract, the court cannot import into the contract some other and different provision for the same contingency, nor can the construction of an agreement, because of the unreasonableness of its terms, be changed to vary the express limitation of its terms.").

### 2. Inapplicability of § 1322(b)(2)

■ Even if I were to accept the defendant's interpretation, the bifurcation judgment in this adversary proceeding is consistent with *Nobelman*. The holding in *Bellamy* related only to the permissible treatment of a claim "secured only by a security interest in real property that is the debtor's principal residence." *See* § 1322(b)(2). As this court held in *In re Spano*, 161 B.R. 880, 883–84 & n. 3 (Bankr.D.Conn.1993), the Supreme Court in *Nobelman* did not consider the meaning of that clause. *See also Miami Valley Bank v. Lutz (In re Lutz)*, 164 B.R. 239, 241 (Bankr.W.D.Pa.1994); *Hirsch v. Citicorp Mortgage (In re Hirsch)*, 155 B.R. 688, 690 (Bankr.E.D.Pa.1993).

■ Courts have generally held that a claim secured by property which has "some inherent income-producing power" is not protected by § 1322(b)(2), even if the debtor also resides on a portion of the property. *Matter of Torres Lopez*, 138 B.R. 348, 351 (D.P.R.

1992) (the fact that the debtors' residence was also their place of business did not alone remove a claim secured by the residence from the protection of § 1322(b)(2)). *Accord In re Spano, supra,* 161 B.R. at 887; *Zablonski v. Sears Mortgage Corp. (In re Zablonski)*, 153 B.R. 604, 606 (Bankr.D.Mass.1993) (a mortgage encumbering a two family home was not protected from modification under § 1322(b)(2)); *In re McVay*, 150 B.R. 254, 256–57 (Bankr.D.Or.1993) (a mortgage encumbering a bed and breakfast, which was the debtor's principal residence but which had "inherent income producing potential," was not protected by § 1322(b)(2)); *In re Jackson*, 136 B.R. 797, 803 (Bankr.N.D.Ill. 1992) (a mortgage encumbering a two-flat unit, where the debtor lived in one unit and occasionally rented the other, was not protected); *In re Ramirez*, 62 B.R. 668, 669–70 (Bankr.S.D.Cal.1986) (claim secured by real property containing the debtor's residence and two rental units was not protected). The fact that a claim is secured by a debtor's residence that sits on a large parcel of land which is not designed for use by more than a single family will not alone remove a claim from the protection of § 1322(b)(2). *See Fed. Land Bank of Louisville v. Glenn (In re Glenn)*, 760 F.2d 1428, 1441 (6th Cir.) (a claim secured by the debtors' residence which was located on a single 50 acre tract used solely as the debtors' residence was protected by § 1322(b)(2)), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *In re Ballard*, 4 B.R. 271, 276 (Bankr.E.D.Va.1980) (a claim secured by a single parcel of 118.19 acres on which the debtors resided was protected by § 1322(b)(2) where the property was not easily divisible, did not front on a public road, and was not used for farming to any significant degree). However, where the security includes property which is not intended for occupancy by the debtor's family, but is intended for use by one or more other families or by a commercial concern, the claim is not protected. *See In re Hines*, 64 B.R. 684, 686–87 (Bankr.D.Colo.1986); *Matter of Leazier*, 55 B.R. 870, 871–72 (Bankr.N.D.Ind. 1985) (a claim secured by an operating farm on which the debtor resided was not protect-

ed by § 1322(b)(2)); *In re Morphis*, 30 B.R. 589, 594 (Bankr.N.D.Ala.1983) (a claim secured by a debtor's mobile home and lot, as well as a separate lot, was not protected by § 1322(b)(2)).

■ The plain language of § 1322(b)(2) supports that result. That subsection protects claims secured only by a security interest in real property that *is* the debtor's principal residence, not real property that *includes* or *contains* the debtor's principal residence, and not real property *on which the debtor resides.* The terms "real property" and "principal residence" are thus equated, suggesting that real property which is designed to serve as the principal residence not only for the debtor's family but for other families is not encompassed by the clause. Had Congress intended the protections of § 1322(b)(2) to apply to property which serves as both the debtor's residence and as income-producing rental property, it would have employed words to effect that result. *Cf.* 12 U.S.C.A. § 1701j-3(d) (West 1989) (prohibiting lenders from exercising due-on-sale clauses as to certain transfers where the loan is "secured by a lien on residential real property containing less than five dwelling units"); 12 U.S.C.A. § 1709(g)(1) (West Supp.1994) ("The Secretary may insure a mortgage ... that is secured by a 1- to 4-family dwelling ... only if the mortgagor is to occupy the dwelling as his or her principal residence or as a secondary residence...."); 15 U.S.C.A. § 1602(v) (West 1982) ("The term 'dwelling' means a residential structure or mobile home which contains one to four family housing units....").

Apart from the security interest in the debtors' principal residence, the defendant's claim is secured by an interest in real property that is *not*, and was not intended to be, the debtors' principal residence, i.e. the two rental units in which the debtors do not reside. The property is inherently income-producing. The defendant's claim is thus not protected by § 1322(b)(2), even if *Nobelman* is given full effect in this case. *Nobelman* did not overrule *Bellamy*'s holding that undersecured claims may generally be bifurcated in chapter 13 cases, but only *Bellamy's* holding that such bifurcation is not a modifi-

cation prohibited by § 1322(b)(2) where a secured claim is secured only by the debtor's principal residence. *See Ford Motor Credit Co. v. Lee (In re Lee)*, 162 B.R. 217, 223–24 (D.Minn.1993); *In re Williams*, 161 B.R. 27, 29–30 (Bankr.E.D.Ky.1993); *In re Hornes*, 160 B.R. 709, 712–14 (Bankr.D.Conn.1993). Inasmuch as the confirmed plan properly treated a portion of the defendant's claim as unsecured even if *Nobelman* is applicable, that plan should not be disturbed under any interpretation of the Stipulation. *See* § 1327(a).

## ORDER

For the foregoing reasons, the instant motion is denied, and IT IS SO ORDERED.